IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re:                                          :
                                                :
Condemnation of the Township                    :
of Robinson of Certain Lands                     :
Owned Now or Formerly of:                       :
                                                :   No.  312 C.D. 2022
E&R Partners, L.P.,                             :   Argued:  October 11, 2022
82 Forest Grove Road                             :
Coraopolis, PA 15108                            :
                                                :
James Esposito                                   :
5852 Steubenville Pike                           :
McKees Rocks, PA 15136                           :
(Lot & Block 266-G-51)                          :
                                                :
Huntley and Huntley                              :
2660 Monroeville Blvd.                           :
Monroeville, PA 15146                            :
                                                :
Herman Edwards                                   :
5852 Steubenville Pike                           :
McKees Rocks, PA 15136                           :
                                                :
Appeal of: E&R Partners, L.P.                    :


BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE STACY WALLACE, Judge
           HONORABLE MARY HANNAH LEAVITT, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WALLACE                                FILED:  April 24, 2023

E&R Partners, L.P. (E&R) appeals the March 4, 2022 order (Order) of the Court of Common Pleas of Allegheny County (trial court) overruling its preliminary objections (POs) to a declaration of taking (Declaration) filed by the Township of Robinson (Township). Upon review, we reverse the trial court's order.

## BACKGROUND

### 1. Factual Background

E&R owns a parcel of real estate located at 5852 Steubenville Pike, McKees Rocks, Pennsylvania, Parcel Number 266-G-51 (E&R Property). Reproduced Record (R.R.) at 8a. E&R Property's driveway sits along Steubenville Pike across from Tidball Road (Tidball intersection).

James Esposito (Esposito) is the president of Capital Builders, Inc., the general partner of E&R, and is responsible for day-to-day operations and use of E&R Property. R.R. at 62a. Before 2003, Esposito was involved in a motor vehicle collision when he was pulling out of E&R Property's driveway onto Steubenville Pike. *Id.* After that collision, Township and the Pennsylvania Department of Transportation (PennDOT) installed a traffic safety light at the Tidball intersection. *Id.* The Tidball intersection is signalized at all four of its "legs," and is the subject of a Traffic Signal Permit, which was originally approved by Township and PennDOT in May 2003. R.R. at 68a.

On March 1, 2011, Michael Dunn (Dunn), member and manager of Five D Development, LLC (Five D), purchased a 2.846-acre parcel of real estate located at Steubenville Pike, Robinson Township, Lot and Block No. 266-G-49 (Five D Property), which sits just west of E&R Property. R.R. at 63a. Dunn purchased Five D Property for developmental purposes. *Id.* at 63a-64a. However, Five D Property lacked direct access to Steubenville Pike. *Id.* at 63a-64a. In an effort to obtain access

2

to Steubenville Pike, Dunn hired engineers and contemplated options for ways to gain access. *Id*.

In mid-2015, Dunn submitted a land development plan to Township's planning commission that envisioned a private right of access to and from Five D Property from Steubenville Pike across from Tidball Road (Five D Site Plan). R.R. at 64a. Township conditionally approved the Five D Site Plan but required that Five D obtain a Highway Occupancy Permit (HOP) and approval from PennDOT before proceeding. *Id*. However, PennDOT indicated that Five D could not put a private entrance immediately adjacent to E&R's signalized driveway and that for Five D to have access to Steubenville Pike at the Tidball intersection, it would need "to be a shared driveway in lieu of just a private entrance." R.R. at 64a. Dunn approached Esposito several times regarding the concept of a shared driveway, but the parties were not able to come to an agreement. *Id*.

Dunn and Esposito were unable to reach an agreement for a shared driveway, so Township began efforts in 2016 to obtain PennDOT approval for a public road through Five D Property from the Tidball intersection to Waterford Drive. R.R. at 65a. It is common for Township to work with developers regarding upgrades, such as public roads and intersections, because the cost of the upgrades is often absorbed by the developer. *Id*.

Meanwhile, in mid-2017, Dunn fired his previous engineer and hired David E. Wooster and Associates, Inc. (Wooster) to provide engineering services related to this project. R.R. at 66a. Jared Crosby (Crosby), Vice President of Wooster, handled this project. *Id*.

On April 19, 2018, Crosby electronically mailed (e-mailed) Dunn regarding PennDOT's requirements for a HOP approval and suggested the possibility of

Township condemning a portion of E&R Property to allow for the traffic signal and intersection to be configured in a more standard design. *Id.* Crosby determined Township would need 188 square feet of E&R Property to meet PennDOT's turning radius requirements and safely contain the construction. *Id.*

Mere days after Crosby's e-mail, on April 25, 2018, Township's Board of Commissioners (Township's Commissioners) received notice that a proposed resolution authorizing the condemnation of a portion of E&R Property would be on the agenda for May 7, 2018's regularly scheduled monthly meeting.[1] R.R. at 67a. Township's Commissioners received the proposed resolution the afternoon before the meeting, on May 6, 2018. *Id.* Around noon on the date of the meeting, May 7, 2018, Crosby e-mailed Township's solicitor John Cambest (Solicitor Cambest) and provided him with the plans and a legal description of E&R Property that would need to be condemned. *Id.* In his e-mail, Crosby indicated "the plans [were] not far advanced," and noted they were "conservative on what was necessary for the taking." *Id.*

At the meeting on May 7, 2018, all five of Township's Commissioners voted to approve Resolution Number 11 of 2018 (Condemnation Resolution). The Resolution provides that Township "desires to construct a new public road and signalization of the intersection with Tidball Road and [Steubenville Pike] on a portion of [E&R Property.]" R.R. at 11a. The Condemnation Resolution indicates Township and E&R could not agree on terms of the value of the property to be condemned and Township desires to acquire the portion of E&R Property by

---

[1] Under The First Class Township Code, Section 3301-A of the Act of June 24, 1931, P.L. 1206, *as amended*, added by the Act of October 29, 2020, P.L. 782, the powers of the township are vested with the board of commissioners and the board of commissioners is responsible for adopting resolutions on behalf of the township. 53 P.S. § 58301-A.

condemnation pursuant to Section 1901 of The First Class Township Code.[2] *Id.* Section Two of the Condemnation Resolution states "it is hereby resolved by the [Township's Commissioners] that [E&R Property] shall be condemned for the purpose of obtaining title in fee simple so that a new public road and traffic signalization equipment may be constructed to signalize the new [Tidball intersection.]" R.R. at 12a.

### 2. The Declaration of Taking

On May 11, 2018, Township filed its Declaration in the trial court. The Declaration states the purpose of the condemnation is to "acquire fee simple title . .

---

[2] According to Section 1901 of The First Class Township Code:

(a) A township may acquire property by eminent domain, including entering upon, appropriating, taking, using and occupying private lands and property for any of the following public purposes:

(1) The laying out, opening, widening, extending, vacating, grading or changing the grades or lines of streets or highways.

(2) The construction of bridges and the piers and abutments for bridges.

(3) The construction of slopes, embankments and storm water sewers and storm water facilities, the changing of watercourses, and the construction of sanitary sewer mains, drains or treatment works.

(4) The erection and extension of water systems, wharves and docks, public buildings, public works or land for a public works related function, municipal waste processing and disposal facilities, including municipal waste landfills, libraries, and the establishing of parks, playgrounds and recreation places.

(5) For all other purposes authorized by this act.

(b) Eminent domain proceedings shall be subject to and conform with the provisions of 26 Pa.C.S. (relating to eminent domain).

53 P.S. § 56901.

. [of E&R Property] for the purpose of constructing a new public road and traffic signalization at the new intersection of Tidball Road and [Steubenville Pike]." R.R. at 9a. The Declaration specifies that the condemnation was carried out pursuant to Township's approval of Resolution Number 11 of 2018. R.R. at 11a.

### 3. E&R's POs

On June 12, 2018, E&R filed POs to the Declaration[3] asserting, in relevant part, that Township acted in violation of the Takings Clause of the Fifth Amendment to the United States Constitution,[4] the Pennsylvania Constitution,[5] and the Property

---

[3] Section 306 of the Eminent Domain Code provides for the exclusive method of challenging a Declaration as follows:

> (1) Within 30 days after being served with notice of condemnation, the condemnee may file preliminary objections to the declaration of taking.
>
> (2) The court upon cause shown may extend the time for filing preliminary objections.
>
> (3) Preliminary objections shall be limited to and shall be the exclusive method of challenging:
>
>> (i) The power or right of the condemnor to appropriate the condemned property unless it has been previously adjudicated.
>>
>> (ii) The sufficiency of the security.
>>
>> (iii) The declaration of taking.
>>
>> (iv) Any other procedure followed by the condemnor.

26 Pa. C.S. § 306.

[4] The Takings Clause of the Fifth Amendment to the United States Constitution states: "[N]or shall private property be taken for public use, without just compensation." *See* U.S. Const. amend. V.

[5] Pursuant to article I, section 10 of the Pennsylvania Constitution, "nor shall private property be taken or applied to public use, without authority of law and without just compensation being first made or secured." Pa. Const. art. I, § 10.

6

Rights Protection Act (the Protection Act).[6]  R.R. at 21a.  E&R argued that the purpose of the condemnation was an attempt, by Township, to take E&R Property on behalf of, and for the benefit of, Five D.  *Id.*  Specifically, E&R asserted that Township was acting on behalf of Five D to improve access to Five D Property for a nonpublic, private purpose under the guise of public convenience or safety.  *Id.*

### 4. Trial Court's Opinion

On March 4, 2022, the trial court issued a memorandum opinion and order overruling E&R's POs.[7]  *See generally* Trial Ct. Op. at 1-5 (pagination supplied); Original Record (O.R.) at 3051-3056.[8]  The trial court cited to its review of the deposition testimony and indicated that "the testimony of the five [Township's Commissioners] clearly demonstrates that their decision was based on the advice of the various professionals who testified that the primary reasons for the taking of the property **was to improve the safety of the intersection**."  Trial Ct. Op. at 5 (emphasis added).  Regarding E&R's assertion that Township's condemnation was done on behalf of and for the benefit of another private party, Five D, the trial court stated that "any such inference would require [the trial court] to use speculation which cannot outweigh the direct credible evidence."  *Id*. at 4.  Citing *In Re Condemnation of .036 Acres, More or Less, of Land Owed by Wexford Plaza Association*, 674 A.2d 1204 (Pa. Cmwlth. 1996), the trial court relied on this Court's

---

[6] The Protection Act states that, except in limited circumstances, "the exercise by any condemnor of the power of eminent domain to take private property in order to use it for private enterprise is prohibited."  26 Pa. C.S. § 204(a).

[7] We note that the trial court elected not to file a Pa.R.A.P. 1925(a) statement and is relying on its March 4, 2022 Memorandum and Order of Court to satisfy its Pa. R.A.P. 1925(a) requirements.

[8] For ease of reference, Original Record page numbers reflect electronic pagination.

7

prior determination that it was immaterial that a private interest may also benefit from a condemnation. *Id*. at 4-5. The trial court concluded that based on the evidence, "it was clear that **the current intersection required changes** for the benefit of the public at large[.]" *Id*. at 4 (emphasis added).

## ISSUES ON APPEAL[9]

On appeal to this Court, E&R argues the trial court erred in overruling its POs to Township's Declaration on the basis that it ignored substantial evidence presented by E&R that E&R Property was condemned for the benefit of Five D Property rather than the public. E&R Br. at 24. E&R argues Township's assertion that the condemnation was for public safety purposes was merely a pretext developed after E&R Property was condemned. *Id*.

E&R further asserts the condemnation was not the result of an investigation leading to an intelligent, informed decision by Township. *Id*. at 31-32. In support of this argument, it points to various discrepancies between the trial court's factual findings and the deposition testimony regarding what Township's Commissioners knew about the condemnation at the time of their vote to condemn E&R Property. *Id*. at 31. Additionally, E&R notes there was ample evidence that the intersection

---

[9] In its Statement of Questions Involved, E&R framed its issues as follows:

> Did the Trial Court err in overruling E&R's Preliminary Objections to the condemnation of E&R's property despite the substantial evidence presented that the Township condemned the property: (i) for the benefit of a private property owner; and (ii) without appropriate investigation leading to an intelligent informed decision?

E&R Br. at 4.

was safe, further supporting its argument that Township's purported basis for the condemnation, "public safety," was pretextual. *Id.* at 25-26.

In response, Township argues its condemnation of E&R Property was within the power afforded to it by The First Class Township Code and is presumed to have been lawful. Township Br. at 8. It argues the authorization was based on "a desire for a safer geometrically designed [i]ntersection with better access to [E&R Property] and [Five D Property], to open access to vacant developable land, and to provide signalized access to Steubenville Pike for residents of the Waterford Plan." Township Br. at 8. Township asserts the mere fact that the developer is benefitted "does not cast a shadow of doubt as to [its] public purpose." Township Br. at 8.

## ANALYSIS

### Eminent Domain Legal Discussion

In an eminent domain proceeding where the appeal involves preliminary objections to a declaration of taking,[10] as it does here, this Court's scope of review is limited to determining whether the trial court abused its discretion or committed an error of law. *In re Condemnation by City of Coatesville of Certain Props.*, 822 A.2d 846 (Pa. Cmwlth. 2003). We recognize that in the trial court's review of Township's decision to condemn E&R Property, the trial court was limited to determining whether Township was "guilty of fraud, bad faith, or [] committed an abuse of discretion." *In re Condemnation by Dep't of Transp., of Right-of-Way of State Route 0443, Section 02S, in Twp. of Mahoning*, 255 A.3d 635, 644-45 (Pa.

---

[10] While preliminary objections serve a different purpose in other civil actions, preliminary objections in eminent domain cases are the procedure intended to expeditiously resolve factual and legal challenges to a declaration of taking before the parties move on to determine damages. *In re Condemnation of .036 Acres, More or Less, of Land Owned by Wexford Plaza Assocs.*, 674 A.2d 1204 (Pa. Cmwlth. 1996); *N. Penn Water Auth. v. A Certain Parcel of Land*, 650 A.2d 1197 (Pa. Cmwlth. 1994).

Cmwlth. 2021) (citation omitted). We are also mindful that E&R bore the burden of proving that Township abused its discretion because the law provides a strong presumption that a municipality has acted properly. *Id.* (citation omitted).

The power of eminent domain permits the Commonwealth to take private property for public use upon payment of just compensation. Pa. Const. art. I, § 10 ("nor shall private property be taken or applied to public use, without authority of law and without just compensation[.]"). The Commonwealth's power to acquire property by eminent domain extends to Township via Section 1901 of The First Class Township Code, 53 P.S. § 56901. However, Township's eminent domain power is limited by constitutional and statutory law.

First, we address the constitutional limitations on Township's exercise of eminent domain power. Under the Takings Clause of the Fifth Amendment to the United States Constitution, land may only be taken without the landowner's consent if it is taken for public use. U.S. Const. amend. V; *Reading Area Water Auth. v. Schuylkill River Greenway Ass'n*, 100 A.3d 572, 580 (Pa. 2014). Likewise, the Pennsylvania Constitution authorizes the exercise of eminent domain power to condemn privately owned property only if it is done for public use. *See* Pa. Const. art. I, § 10 ("[N]or shall private property be taken or applied to public use, without authority of law and without just compensation being first made or secured."). Thus, our constitutions require that for a municipality's condemnation of private property to be lawful, it must be for a public purpose.

Next, we turn to the statutory limitations on Township's exercise of eminent domain power. The Eminent Domain Code (Code), 26 Pa. C.S. §§ 101-1106, governs eminent domain proceedings in Pennsylvania and provides "a complete and exclusive procedure and law to govern all condemnations of property for public

10

purposes." 26 Pa. C.S. § 102.  In 2006, the General Assembly amended the Code by enacting the Protection Act, 26 Pa. C.S. § 204.  In relevant part, the Protection Act expressly prohibits, subject to several exceptions, the taking of one's private property for another private enterprise.  26 Pa. C.S. § 204(a).  We find it noteworthy that our legislature's enactment of the Protection Act followed the United States Supreme Court's decision in *Kelo v. City of New London*, 545 U.S. 469 (2005).

In *Kelo*, the United States Supreme Court addressed the issue of whether the city's taking of private property for economic development and use by a private developer satisfied the "public use" requirement of eminent domain power. *Id*.  In the 5-4 decision, the majority concluded that economic development qualified as a public purpose because, although the properties to be taken were not blighted, the economic rejuvenation of the development was in the public interest.  *See id*. at 483. In Justice O'Connor's dissenting opinion, in which Chief Justice Rehnquist, Justice Scalia, and Justice Thomas joined, she wrote, in criticism of the majority's opinion:

> To reason, as the Court does, that the incidental public benefits resulting from the subsequent ordinary use of private property render economic development takings "for public use" is to wash out any distinction between private and public use of property- and thereby effectively to delete the words "for public use" from the Takings Clause of the Fifth Amendment.

*Id*. at 494 (O'Connor, J., dissenting).

Our legislature, perceiving the *Kelo* decision as an abuse of eminent domain power, passed the Protection Act.  *See, e.g.,* House Legislative Journal, Nov. 1, 2005, at 2169-72; Senate Legislative Journal, April 25, 2006, at 1552.  The purpose of the Protection Act is to balance individual private property rights and the needs of urban centers to rehabilitate blighted areas imposing harm upon the public.  *See, e.g.*, House Legislative Journal, Nov. 1, 2005, at 2169-72; Senate Legislative Journal,

11

April 25, 2006, at 1552. The legislature designed the Protection Act to diminish the ability of condemnors to take private property. *Reading*, 100 A.3d at 583.

Considering the intent and purpose of the Protection Act, we note its broad prohibition in terms of whether private property is being condemned "to use it for private enterprise." 26 Pa. C.S. § 204(a). Because both the United States Constitution and the Pennsylvania Constitution require a condemnation be for a public use, a condemnation intended solely for the benefit of a private party would be unconstitutional. Thus, it is clear from the legislature's language in the Protection Act that it intended to further limit the application of the public use standard. *Reading*, 100 A.3d at 583. Our Pennsylvania Supreme Court has acknowledged that the Protection Act is more restrictive in scope than preexisting constitutional protections against the government's power of eminent domain. *Id*. Additionally, the Supreme Court noted that the government's eminent domain power "is necessarily in derogation of a private right, and the rule in that case is that the authority is to be strictly construed: what is not granted is not to be exercised." *Middletown Twp. v. Lands of Stone*, 939 A.2d 331, 337 (Pa. 2007).

In consideration of the relevant constitutional standards combined with the Protection Act, it is clear that without a public use purpose, the government lacks authority to take property from private owners. *Middletown*, 939 A.2d at 337. As our Supreme Court has indicated, what constitutes a "public use is highly fact-dependent." *Reading*, 100 A.3d at 580. The Court has established that "public use" equates to a "public purpose" and has indicated that to determine whether a public purpose exists, the court must look for the "real or fundamental" purpose behind a condemnation. *Middletown*, 939 A.2d at 337. A public purpose exists only when the public is "the primary and paramount" beneficiary of the condemnation. *Id*.

12

While we acknowledge that a condemnation "does not lose its public character merely because there may exist in the operation some feature of private gain[,]" *Reading*, 100 A.3d at 577 (citation omitted), a condemnation cannot be "under the mere pretext of a public purpose, when its actual purpose was to bestow a private benefit." *Kelo*, 545 U.S. at 478. In determining whether an asserted public purpose is pretextual, the court must consider whether the condemnation was executed pursuant to a carefully developed plan. *Kelo*, 545 U.S. at 478 (citation omitted). A condemnation is only valid where the property is condemned "after a suitable investigation leading to an intelligent, informed judgment by the condemnor." *Middletown*, 939 A.2d at 338 (citation omitted).

In *Pidstawski v. South Whitehall Township*, 380 A.2d 1322, 1324 (Pa. Cmwlth. 1977), a township's taking was upheld "because rather than being arbitrary, the record demonstrated that it was carefully planned and painstakingly thought out with a view toward present and future requirements." *Middletown*, 939 A.2d at 338. Evidence of a well-developed plan provides proof that an authorized purpose motivates a condemnation. *Id*. We note that the government cannot give "mere lip service to its authorized purpose" or "act precipitously and offer retroactive justification" for its condemnation of private property. *Id*. at 338. To be valid, a condemnation must be supported by a condemnation proceeding informed by an intelligent judgment to use the condemned property for its asserted purpose. *Id*.

### Standard of Review

E&R argues the trial court's findings are not supported by substantial evidence. This Court has stated that "[a]n abuse of discretion occurs when the findings are not supported by substantial evidence in the record. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to

13

support a conclusion." *Coal Gas Recovery, L.P. v. Franklin Twp. Zoning Hearing Bd.*, 944 A.2d 832, 838 n.9 (Pa. Cmwlth. 2008). For evidence to be substantial, it must be "more than a scintilla and must do more than create a suspicion of the existence of the fact to be established." *Bennett v. Bureau of Pro. & Occupational Affs., State Bd. of Chiropractic*, 214 A.3d 728, 735 (Pa. Cmwlth. 2019) (citation omitted). We review the trial court's findings to determine whether its findings are based on substantial evidence. We begin by reviewing the trial court's findings regarding Township's Commissioners because the "corporate power of a township of the first class [is] vested in [the board] of commissioners[,]" Section 1502 of The First Class Township Code, 53 P.S. § 56502, and, therefore, in reviewing whether Township, as the condemnor, complied with the law regarding its condemnation of E&R Property, the trial court necessarily considered the testimony of Township's Commissioners.

## Evidence of Record

### Township's Commissioners

In its decision, the trial court indicates that it reviewed the deposition testimony of the five Township Commissioners and made specific findings regarding each of Township's Commissioners.

### Commissioner Abatta

First, the trial court stated that "Commissioner Sam Abatta [(Commissioner Abatta), who was chairman of Township's Commissioners,] testified that he put significant weight upon the recommendations of the Planning Commission." Trial Ct. Op. at 2. However, the evidence of record does not substantially support this conclusion. The record reveals that Commissioner Abatta's testimony indicated he was unaware that Township had condemned E&R Property and further unable to

14

indicate precisely what he relied on during the decision to do so. When asked about the condemnation of E&R Property during his deposition on January 8, 2019, Commissioner Abatta testified as follows:

> Q: Will you agree with me that the Township has condemned a portion of [E&R Property] . . . ?
>
> A: No
>
> Q: [Township] hasn't taken any property to your knowledge?
>
> A: No
>
> Q: At any time?
>
> A: No.
>
> Q: [Commissioner Abatta,] we're taking your deposition today in relation to a matter that's pending before [trial court]. Do you know what that matter relates to?
>
> A: It's a situation between [Esposito] and [Dunn].
>
> Q: Okay, it doesn't have to do with [Township] as far as you know?
>
> A: Well, it's occurring on Township property, I mean, the confines.
>
> Q: Is [Township] a party to that litigation, or is it effectively just a witness?
>
> A: I think it would be just a witness. I don't think [Township] has any interest one way or another what happens.

R.R. at 371a-72a. Upon further questioning, Commissioner Abatta stated the following:

15

Q: Is it your understanding that [Township] has taken property of [E&R]?

A: No. [Township] – we haven't taken anything.

Q: Okay. From your perspective, this remains a dispute between [Dunn] and [Esposito], and that's the end of it as far as you're concerned, correct?

A: Yes.

R.R. at 372a-73a. When questioned specifically about whether he recalled having voted on a resolution to condemn [E&R Property], he stated "we vote on so many different motions during any public meetings. Specifically [,] do I remember every one, and this one specifically? No." *Id.* When asked whether he was provided with a copy of any plans indicating precisely what was condemned, he said "[n]o." R.R. at 381a. Therefore, the record offers no support for the trial court's conclusion that Commissioner Abatta put significant weight upon the recommendations of the Planning Commission in his decision to vote to pass the Resolution.

### Commissioner Kisow

Next, the trial court indicates that Commissioner Kenneth Kisow (Commissioner Kisow) "relied on the professional advice of the engineer, PennDOT and Solicitor." Trial Ct. Op. at 2. However, the evidence of record does not substantially support this conclusion. Upon review of the record, Commissioner Kisow is the "head of the Public Safety Commission" for Township. R.R. at 264a. When asked why Township was taking E&R Property, he stated "[f]rom my understanding, from the Solicitor and PennDOT viewed it as an issue to straighten that light out, is the way I took it." R.R. at 266a.

16

His testimony regarding his knowledge of the condemnation of E&R Property was as follows:

> Q. Okay. Do you recall what was the basis for the decision to condemn a portion of [E&R Property]?
>
> A. Before the meeting in executive session, we discussed from the advice of the [S]olicitor and the PennDOT recommendation is solely what I went on.
>
> Q. When you refer to the PennDOT recommendation?
>
> A. The realignment thing that we were told that they said they need that place for. Need the piece of property for the realignment of the light. That's the way I understood it in that meeting.

R.R. at 271a. When asked whether safety of the intersection was discussed when they were making the decision to condemn E&R Property, he stated "[n]o, solely on professional advice of the engineer, PennDOT, and the [S]olicitor, whoever designed it." R.R. at 273a.

When asked whether Commissioner Kisow, as the head of Township's Public Safety Commission, had any reason to believe there was a safety issue with the Tidball intersection, he indicated he did not. He indicated that over the five years that he had been with Township, no one approached him regarding an issue with the safety of the Tidball intersection. He stated that as far as he was aware, none of the accidents at the intersection were unusual. He has never been asked to evaluate safety considerations of the intersection, has never had any discussions with other Township officials regarding safety concerns of the Tidball intersection, and he never concluded at any time that Township needed to take action to improve the operation of the safety signal or the intersection's alignment. R.R. at 269a-70a.

## Commissioner Barefoot

Next, the trial court found that Commissioner James Barefoot (Commissioner Barefoot) "weighed all of the professional opinions such as the Planning Department[,] the Township Engineer, and . . . PennDOT." Trial Ct. Op. at 3. The evidence of record does not substantially support this conclusion. Commissioner Barefoot, who was chair of planning and zoning, testified regarding his understanding of the reason Township condemned E&R Property as follows:

Q. And what was the reason the Township condemned [E&R Property]?

A. My understanding is for an entrance to –

Q. So [Township] condemned the property so that there would be an entrance to what?

A. I understand a strip mall there.

. . . .

Q. Would you say it's the primary reason for the take, for the condemnation, that was approved by [Township] was for development of the [Five D Property]?

A. Yes.

. . . .

Q. What is your personal reasoning, your personal understanding, as to why it was a good idea to condemn this property?

A. My personal reason, there was a business in there prior to it, and it seemed good, if it was a strip mall in there, to have another exit.

R.R. at 642a, 644a.

Regarding a plan, Commissioner Barefoot testified that he did not observe any plans regarding the purported road going through Five D Property before voting on

18

the condemnation. R.R. at 659a. He indicated that he did not conduct any investigation into the merits of the condemnation, and when asked if anyone else did, he stated "[t]o my knowledge, probably the people in the Township did." R.R. at 645a. Upon further questioning, he was not able to indicate that anyone, **even the professionals he referenced**, had provided him with information, a recommendation, or any plans regarding the condemnation. R.R. at 647a. When specifically questioned about whether he recalled looking at any plans before voting, he stated, "No." R.R. at 647a. Therefore, the record does not support the trial court's conclusion that Commissioner Barefoot actually weighed any professional opinions before voting to pass the resolution.

### Commissioner Mancici

Next, the trial court found that Commissioner James Mancici (Commissioner Mancici) was "presented with information from the Planning Commission, Township Engineer[,] and others and relied on that information in making a decision." Trial Ct. Op. at 3. Upon review of the evidence, while Commissioner Mancici referenced that he "would have" been provided with information from the Planning Commission, Township Engineer and "from whoever they would work with to address that[,]" he was not able to articulate what, if any, information those parties provided to him. R.R. at 613a-14a. Specifically, Commissioner Mancici testified as follows:

> Q. And do you recall having any conversations with the Township Engineer with respect to the [Tidball intersection]?
>
> A. I don't recall the conversation, so I couldn't tell you the date or anything like that. I would say there was probably – there was a conversation; I just don't know when it was.

19

Q. Anything with respect to the merits of it, why it was a good idea to condemn the property that came from the Township Engineer?

A. Again, I wouldn't be able to tell you specifics.

Q. What led you to decide that it was a good idea to condemn the property?

A. I would have made that decision based on the information that was given to me at that time.

Q. Okay. You don't remember what it is, but you would have relied on something; is that your –

A. I would have. I would have relied on that information.

Q. But you don't know what it is?

A. I do not.

R.R. at 613a-14a. When asked whether he had any discussions with the other Township Commissioners regarding the merits or the pros and cons of the condemnation, Commissioner Mancici stated, "I don't recall any." R.R. at 620a.

### Commissioner Shiwarski

The trial court found that Commissioner Ronald Shiwarski "relied on the expertise of the Engineer, Solicitor, and Planning director and listened to what their opinion [was] for the best interest of [Township]." Trial Ct. Op. at 3. Upon review of the record, Commissioner Shiwarski testified as follows regarding the reason for the condemnation:

Q. . . . . What was the reason for [Township] condemning a portion of [E&R Property] that's at issue in this case?

A. I don't have an answer to that, okay? I'd have to refer – I know it was brought before our board that's how it became – we acted to use your word, condemn the property.

20

R.R. at 679a.  While it is true, as the trial court found, that Commissioner Shiwarski indicated that he relied on various individuals, it is clear upon further review of the record that he was unable to articulate any information upon which he relied or specify who provided him information based on the following testimony:

> Q. Do you remember any pros or any cons at all with respect to it?
>
> A. I'm trying to remember, but I don't recall.  And again, I don't want to sound redundant, but in my position, okay, I rely heavily on the Township Manager, the appointed engineer, the planning director, or our solicitor to give us the information, and then I formulate what I feel is best.
>
> Q. Do you recall anything with respect to the information they provided you in relation to this condemnation?
>
> A. Specifically, no, except that whatever they did tell me that led me to vote yes for the –
>
> Q. Do you recall having asked any questions with respect to the information that they were providing you?
>
> A. I'm sure I did, okay, but I don't recall because . . . I usually ask questions.

R.R. at 681a.  When asked about the size of the condemned property, Commissioner Shiwarski indicated, "I heard it was minimal."  R.R. at 688a.  When asked about the location of the condemned property, he indicated, "I can't recall it specific that way."  R.R. at 689a.

### Reliance on Others

We recognize Township's Commissioners justifiably rely upon trusted advisors, such as experts and municipal staff in reaching these decisions.  Because the trial court's basis for upholding Township's condemnation was because Township's Commissioners' decision was based on the "advice of the various

21

professionals who testified that the primary reasons for the taking of the property was to improve the safety of the intersection[,]" Trial Ct. Op. at 5, we must consider whether Township staff and other professionals actually relayed this as the reason for the taking to Township's Commissioners.

### Township Staff and Professionals

First, we review the record containing the testimony of Rick Urbano (Urbano), Township's Planning Director. The trial court found that Urbano "testified that the current intersection as it exists has deficiencies and is unsafe." Trial Ct. Op. at 3. Urbano has been on Township's planning commission since 1981 and has been planning director since 1998. R.R. at 65a. Regarding the safety of the Tidball intersection, Urbano testified as follows:

> Q. . . . Do you believe there are deficiencies with that intersection?
>
> A. Most definitely. It's unsafe.
>
> Q. What are they?
>
> A. Turning lanes, radiuses, the whole bit.

R.R. at 283a. However, upon further questioning, Urbano was unable to articulate any further basis for his contention that the intersection was not safe. He testified that he "didn't seek any police reports[,]" could not verify a number of accidents at that intersection, and he had not heard of anyone from the public who has a concern about the safety of that intersection. R.R. at 283a-84a. Urbano testified several times that it was PennDOT that first brought up the idea of condemning E&R Property.

Next, we review the testimony of Frank Piccolini (Piccolini), Township's Manager. The trial court found that Piccolini "testified that the plan was to condemn

22

a specific small parcel to have a better signalization of the [Tidball intersection] which would make it safer." Trial Ct. Op. at 3.

When specifically asked, Piccolini stated:

Q. Do you believe that the intersection is unsafe as it exists today at [the Tidball intersection]?

A. I couldn't answer that. I'm not an engineer.

Q. You don't have an opinion either way?

A. No.

R.R. at 564a.

Piccolini believed that PennDOT had informed Crosby that it wanted Township to condemn E&R Property. R.R. at 565a. Piccolini testified:

Q. And was the fact that [Township] heard that PennDOT told [Crosby] that PennDOT thought it was a good idea to take property at this intersection, was that a factor – [d]id that influence [Township's] decision to take [E&R Property]?

A. I believe it did.

. . . .

Q. If PennDOT had said to [Township] the developer could just simply have a driveway that entered into Waterford and not have any access to [Steubenville Pike], would there be a need for this condemnation?

A. I don't think so. I can't speak for the board[,] but I don't think so.

. . . .

Q. . . . What was the reason why the property was condemned?

A. To basically make the signal safer. I think there was a more geometric term, a 90-degree radius. That was the reason for PennDOT.

Q. It came from PennDOT?

A. Yes.

Q. If it weren't for PennDOT making that suggestion, this wouldn't have happened?

A. Yes. Correct.

. . . .

Q. At this point other than PennDOT's statement as reflected in [Crosby's] [e-mail], is there any other reason why you think it would be appropriate to take [E&R Property]?

A. None that I'm aware of.

R.R. at 566a, 571a.

Piccolini testified that at the time Township's Commissioners passed the resolution and the condemnation occurred, the plans for the roadway were not yet developed. R.R. at 563a. Piccolini also testified that Township's Commissioners did not receive the plans for the condemnation or the metes and bounds until "sometime before four o'clock via [e-mail]" on the date of the meeting. R.R. at 584a. Township's Commissioners were provided a hard copy of the packet at the meeting. R.R. at 584a. Piccolini further indicated that it was Crosby's e-mail that triggered moving forward with the condemnation. R.R. at 574a. He stated his understanding was that the developer would pay for the costs associated with the changes to the signalization and that if the developer refused to pay, then Township would not proceed. R.R. at 568a.

Next, we review the testimony of Michael Meyers (Meyers), Township's Engineer. The trial court found that Meyers "testified that he believes that the intersection as it stands is unsafe." Trial Ct. Op. at 3. When asked why he did not

24

believe the intersection was safe, he indicated "when you don't have an intersection that is at 90 degrees or 180 degrees from each other, and you have an angled intersection like that, I think it leads to concerns." O.R. at 2302. Other than the geometric deficiencies, Meyers testified that he had no other concerns with the intersection. O.R. at 2309. Regarding the condemnation, Meyers testified as follows:

> Q: . . . At some point [Township] decides to condemn a portion of [E&R Property]. Were you involved in that decision making process where [Township] goes from not condemning it to deciding to condemn it?
>
> A: I believe at one time I had discussions with Township officials concerning a response from PennDOT that required the condemnation of these areas.
>
> Q: And so there was a communication from PennDOT saying that the condemnation is required?
>
> A: I was part of those conversations, however, I cannot remember specifically the communication.
>
> Q: Do you remember when that was?
>
> A: No.

O.R. at 2319.

**PennDOT Employees**

Next, we review the record evidence regarding the PennDOT employees' testimony as several witnesses testified that the condemnation was brought about by PennDOT's concerns of safety at the Tidball intersection.

First, we review the testimony of Frank Cippel (Cippel), a PennDOT civil engineer. The trial court found that Cippel "believed bringing the intersection directly across from Tidball would make it safer." Trial Ct. Op. at 4. When asked

25

directly whether Cippel believed that the Tidball intersection, as it exists today, is unsafe, he stated "I think it could be made safer." R.R. at 434a. When asked whether PennDOT considers safety in its approval of intersections, he stated, "Yeah." R.R. at 430a. Cippel testified that "PennDOT . . . . compiles a listing of the top crash intersections. And a lot of times that's how [PennDOT] find[s] out which traffic signalized intersections are problem areas." R.R. at 452a. He specified that he "[didn't] ever recall this specific intersection ever coming up on any of those lists." *Id*.

Regarding his understanding of the purpose of the intersection, Cippel indicated, "**I mean, if there was nobody developing their property, we obviously wouldn't be having a meeting to discuss a new driveway location onto [Steubenville Pike].**" R.R. at 446a (emphasis added). When specifically asked if the primary purpose of the meeting where the intersection was discussed was for the purpose of safety, he indicated, "**No. No. The primary reason for that meeting was to discuss a potential development and an access point for that development onto [Steubenville Pike].**" R.R. at 447a (emphasis added).

The trial court failed to make any findings of fact with respect to PennDOT employee Jason Molinero's (Molinero) testimony. Upon review of the record, we note that despite Crosby's testimony that he was told by Molinero, a PennDOT employee, that the condemnation would be an acceptable and more desirable way forward to provide the best possible intersection, Molinero denied making that statement to Crosby. R.R. at 427a-28a. Further, Molinero testified that he did not know anyone at PennDOT who would have relayed that to Crosby. *Id*. Molinero specified he did not suggest condemnation to Township and "[does] not know enough about eminent domain to ever suggest it in a conversation." R.R. at 419a.

26

Therefore, the record lacks support for the proposition that Township's fundamental purpose in exercising its eminent domain power was to improve the safety of the intersection based on advice from PennDOT. Similarly, the record lacks support for the trial court's conclusion that Township's Commissioners relied on advice from other Township staff and professionals when they voted to pass the Condemnation Resolution to exercise Township's eminent domain power.

**Application of Evidence**

Whether this Court, not having heard any of the witnesses, believes Township's condemnation was a ploy to benefit Five D is irrelevant; the only relevant inquiry is whether the record supports the trial court's conclusions. For the following reasons, we conclude that it does not.

First, we note the record demonstrates a lack of plan by Township to condemn E&R Property. While the trial court noted one-line snippets of each Township's Commissioner's testimony to support its conclusion that their testimony "clearly demonstrates that their decision was based on the advice of the various professionals who testified that the primary reasons for taking of the property was to improve the safety of the intersection[,]" Trial Ct. Op. at 5, upon review of the totality of the record, including the testimony of Township's Commissioners and various professionals, this conclusion is not supported by substantial evidence.

Additionally, the record lacks evidence of any carefully developed plan to effectuate Township's stated purpose of "public safety." Township's Commissioners were notified that there would be a resolution for a condemnation days before their scheduled meeting and they received the resolution and plans on the day of the meeting. While several of Township's Commissioners testified that they relied on the advice of the various professionals in making the decision to

27

condemn E&R Property, it is clear upon review of those individuals' testimony, as well as the testimony of the identified professionals, that Township's Commissioners did not exercise informed judgment. Township's Commissioners asserted reasonings for the condemnation of E&R Property were inconsistent. While some made broad assertions about "safety," none were able to articulate the safety concerns being addressed. While some made assertions about straightening the intersection, none were able to articulate what public benefit that would confer. Some of Township's Commissioners testified that their understanding was that PennDOT was proposing that it needed the portion of E&R Property to improve safety of the intersection. *See* R.R. at 266a-67a, 564a-66a. However, the record is devoid of evidence to support the idea that PennDOT recommended condemnation of E&R Property for safety or any other purpose.

At the time Township's Commissioners acted to invoke Township's eminent domain power, they did not discuss the source of their authority or note that "safety" was the primary purpose authorizing the decision to invoke the power of eminent domain. As our Supreme Court stated in *Middletown*, it cannot "be sufficient to merely wave the proper statutory language like a scepter under the nose of a property owner and demand that he forfeit his land for the sake of the public." *Middletown*, 939 A.2d at 340. We require "substantial and rational proof by way of an intelligent plan" to prove that a public purpose is the actual goal of a condemnation. *Id.* This record does not support a finding that the condemnation proceeding was informed by intelligent judgment or a concrete plan to use the land to implement a public roadway to improve public safety.

Conversely, the record demonstrates that Township's assertion that the condemnation was for public safety is pretextual. Commissioner Kisow,

28

Township's head of the public safety commission, testified at length regarding the safety of the Tidball intersection. Commissioner Kisow testified that he had no reason to believe that there was any issue with safety at the Tidball intersection, that no one had ever come to him with a concern about the safety of the Tidball intersection, and that he was not aware of any unusual traffic accidents at that intersection. R.R. at 266a-67a. As the head of the public safety commission, Commissioner Kisow indicated that he has never evaluated safety considerations at the Tidball intersection, that he has never had any discussions with other Township officials regarding safety of the intersection, and that he has not concluded at any time that Township needed to take action to improve the intersection. *Id*. at 270a. Notably, Commissioner Kisow testified that the safety of the Tidball intersection was never discussed in reference to condemning E&R Property. *Id*. at 273a. Similarly, Commissioner Abatta, who was chairman of Township's Commissioners, testified that he had no knowledge of Township evaluating the safety of the Tidball intersection. R.R. at 368a. Likewise, Commissioner Barefoot, who was chair of planning and zoning, testified that he has no knowledge of any safety concerns with the Tidball intersection. R.R. at 641a. Commissioner Barefoot stated that he did not review anything from any professional with respect to safety of the Tidball intersection. R.R. at 642a. Consistently, Commissioner Shiwarski testified that he did not have any conversations with respect to the safety of the Tidball intersection. R.R. at 686a.

Therefore, the record evidence does not support the trial court's conclusion that Township's condemnation of E&R Property was for a public purpose. Rather, the evidence demonstrates that Township's condemnation of E&R Property was on behalf of and for the benefit of Five D. The condemnation process was initiated by

29

Crosby, the engineer working on behalf of Five D. It was Crosby's e-mail referencing PennDOT's alleged recommendation to condemn the property that was relied on by Township's Commissioners in making the decision for Township to condemn E&R Property. Even Township's Commissioners assert that the condemnation was for Five D. Specifically, when asked why Township condemned the E&R Property, Commissioner Barefoot indicated "my understanding for an entrance to . . . I understand a strip mall there." R.R. at 642a. When asked whether the condemnation was done for the development of Five D Property, Commissioner Barefoot indicated, "Yes." R.R. at 642a. Piccolini, Township Manager, testified:

> Q. If PennDOT had said to [Township] the developer could just simply have had a driveway that entered into Waterford and not have any access to [Steubenville Pike,] would there be a need for this condemnation?
>
> A. I don't think so. I can't speak for the board[,] but I don't think so.

R.R. at 566a.

The record demonstrates that the public is not the "primary and paramount" beneficiary of the condemnation, as is required to conclude that Township's condemnation of the E&R Property was for a public purpose. While the law may permit development as a broad public purpose, the trial court's conclusion that the condemnation was for the purpose of public safety is not supported by the record. It cannot be sufficient to conclude Township's Commissioners relied on various professionals when (1) Township's Commissioners did not indicate they relied on various professionals' opinions regarding the safety of the intersection and (2) the testimony of the professionals does not support the conclusion that the taking was for public safety or any other public purpose.

30

## CONCLUSION

The trial court's conclusion that Township's condemnation of E&R Property was for the purpose of public safety is not substantially supported by the evidence of record.[11] The law requires "more than a scintilla [of evidence] creating a mere suspicion" that Township's condemnation of E&R Property was for a public purpose. *Barnes v. Dep't of Justice*, 452 A.2d 593 (Pa. Cmwlth. 1982). While the public may benefit from an additional road and a geometric signalized intersection, the record demonstrates that the primary purpose of the condemnation is for development of Five D Property. Additionally, this record does not support any finding that Township's Commissioners, acting on behalf of Township, were involved in a condemnation proceeding that was informed by intelligent judgment or a concrete plan, which is required for a condemnation to be valid. *See Middletown*, 939 A.2d at 338. Thus, the condemnation of the portion of E&R Property for the installation of the road to connect Five D Property to Steubenville Pike falls within the Protection Act's prohibitive scope. Therefore, this Court concludes that by failing to consider the Protection Act's requirements and overruling E&R's POs, the trial court abused its discretion and erred as a matter of law.

Accordingly, we reverse the trial court's order.

_____
STACY WALLACE, Judge

---

[11] We acknowledge the trial judge visited the Tidball intersection and that this is a factor which is to be given substantial weight by this Court when reviewing an award in an eminent domain case. *See In re Dep't of Transp.*, 393 A.2d 41, 43 (Pa. Cmwlth. 1978). However, the trial judge's visit and observation of the property does not circumvent the requirement that the taking be for a public purpose.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re:                                      :
                                            :
Condemnation of the Township                :
of Robinson of Certain Lands                :
Owned Now or Formerly of:                   :
                                            :   No.  312 C.D. 2022
E&R Partners, L.P.,                          :
82 Forest Grove Road                        :
Coraopolis, PA 15108                        :
                                            :
James Esposito                              :
5852 Steubenville Pike                      :
McKees Rocks, PA 15136                      :
(Lot & Block 266-G-51)                      :
                                            :
Huntley and Huntley                         :
2660 Monroeville Blvd.                      :
Monroeville, PA 15146                       :
                                            :
Herman Edwards                              :
5852 Steubenville Pike                      :
McKees Rocks, PA 15136                      :
                                            :
Appeal of: E&R Partners, L.P.               :

# **O R D E R**

AND NOW, this 24th day of April 2023, the March 4, 2022 order of the Court of Common Pleas of Allegheny County overruling E&R Partners, L.P.'s preliminary objections is **REVERSED**.

_____
STACY WALLACE, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re:                                    :
                                          :
Condemnation of the Township              :
of Robinson of Certain Lands              :
Owned Now or Formerly of:                 :
                                          :        No. 312 C.D. 2022
E&R Partners, L.P.,                       :        Argued: October 11, 2022
82 Forest Grove Road                      :
Coraopolis, PA 15108                      :
                                          :
                                          :
James Esposito                            :
5852 Steubenville Pike                    :
McKees Rocks, PA 15136                    :
(Lot & Block 266-G-51)                    :
                                          :
                                          :
Huntley and Huntley                       :
2660 Monroeville Blvd.                    :
Monroeville, PA 15146                     :
                                          :
                                          :
Herman Edwards                            :
5852 Steubenville Pike                    :
McKees Rocks, PA 15136                    :
                                          :
Appeal of: E&R Partners, L.P.             :

BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE STACY WALLACE, Judge
           HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

DISSENTING OPINION
BY SENIOR JUDGE LEAVITT                            FILED: April 24, 2023

        The majority has done a careful and thoughtful review of this case.

Respectfully, however, I must dissent.

        This case concerns the Township of Robinson's (Township)

condemnation of less than one acre of land owned by E&R Partners, L.P.

(Condemnee) to improve the intersection of Tidball Road and Steubenville Pike in the Township. The Court of Common Pleas of Allegheny County (trial court) found that the improvement was necessary on the basis of credited testimony from a traffic engineer with the Pennsylvania Department of Transportation, as well as the testimony of the Township manager and the Township engineer. The trial court credited the Township's evidence that "the intersection as it stands is unsafe" and "required changes for the benefit of the public at large." Trial Court Op. at 4. Perhaps most importantly, the trial court's own site visit confirmed the need for a reconfiguration of the intersection. The trial court's findings based on the site visit are entitled to deference, as are all its factual findings. *See Township of Millcreek v. Angela Cres Trust of June 25, 1998*, 25 A.3d 1288, 1291 (Pa. Cmwlth. 2011) (trial court's factual findings based upon its site visit supported its decision to sustain condemnee's preliminary objections to the takings).

As to the vote on the condemnation, the trial court credited the testimony of the Township Commissioners that their decision was based upon the advice of Township staff and professionals that "the current intersection required changes for the benefit of the public at large[.]" Trial Court Op. at 4. The majority concludes that the trial court erred or abused its discretion in making this factual finding because while "some made broad assertions about 'safety,'" the Commissioners were not able to articulate "the safety concerns being addressed" or "what public benefit that would confer." *In Re: Condemnation of Township of Robinson of Certain Lands (Appeal of: E&R Partners, L.P.)* (Pa. Cmwlth., No. 312 C.D. 2022, filed April 24, 2023, slip op. at 28. The majority finds significant the testimony that there have not been an unusual number of accidents at the intersection in recent years. The majority further reasons that because the Township

MHL-2

Commissioners were not presented with a "carefully developed plan" on public safety, they did not exercise "informed judgment." *Id.* There are several problems with this analysis.

To begin with, the relevant inquiry is not whether there is evidence in the record to support a factual finding contrary to the one made but, rather, whether there is substantial evidence to support the factual finding that was made. *Mulberry Market, Inc. v. City of Philadelphia, Board of License and Inspection Review*, 735 A.2d 761, 767 (Pa. Cmwlth. 1999). Here, the trial court referred to precise deposition testimony in finding that each Commissioner in question relied on the recommendation of professionals or staff that the new road would improve safety. The trial court's factual findings on each Commissioner's vote are supported by substantial evidence and cannot be disturbed. *Appeal of Waite*, 641 A.2d 25, 27 n.1 (Pa. Cmwlth. 1994). We cannot give different weight to the testimony of the Commissioners or reverse the trial court's credibility determinations thereon, without assuming the fact-finding function of the trial court. *See In re Condemnation of Land for the South East Central Business District Redevelopment Area # 1*, 946 A.2d 1143, 1149 (Pa. Cmwlth. 2008).

In its challenge to the declaration of taking, Condemnee bore the burden of proving that the Township condemned its land fraudulently, or in bad faith, for a private purpose, and that burden is a heavy one. *Appeal of Waite*, 641 A.2d at 28. There is "a strong presumption that the condemnor has acted properly." *Id.* Here, Condemnee tried to meet its burden with circumstantial evidence, *i.e.*, using depositions of the Township Commissioners to show that they "did not conduct a suitable investigation leading to an intelligent, informed judgment" before condemning the property. Condemnee Brief at 32. Thus, Condemnee believes it

MHL-3

can be inferred that the true purpose of the condemnation was to benefit a private development. The majority agrees, citing to *Middletown Township v. Lands of Stone*, 939 A.2d 331 (Pa. 2007).

The majority's reliance on *Middletown Township* is misplaced. In *Middletown Township*, the township condemned a 175-acre working farm "for recreation and open space purposes." *Id*. at 333. Our Supreme Court reversed the trial court's denial of the condemnee's preliminary objection although it did so while leaving "undisturbed the factual findings made by the trial court." *Id*. at 338. The Supreme Court held, first, that the Open Space Lands Act[1] prohibited the township from using its eminent domain power to preserve open space. Second, there was no record evidence that recreation was the actual purpose for the condemnation because "recreation" did not appear in the township's planning resolution. Other than preservation for open space, the township had "no specific plan" for the farm, and the trial court so found. *Middletown Township*, 939 A.2d at 334. In that context, the Supreme Court ruminated on the desirability of a "carefully developed plan" and noted that a condemnation based on sound judgment will be upheld. *Id*. at 340. However, the issue in *Middletown Township* was not whether the township's condemnation plan was "carefully developed" but, rather, whether the township even had the power to condemn land for open space. The Supreme Court held that the township "took the land for purposes outside its limited authority" because it lacked authority to condemn land to preserve open space. *Id*.

Unlike *Middletown Township*, where the township had no recreational development plan whatsoever for a 175-acre farm, here the Township's resolution stated expressly that the property shall be condemned "so that a *new public road* and

---

[1] Section 8 of the Act of January 19, 1968, P.L. (1967) 992, *as amended*, 32 P.S. §5008.

traffic signalization equipment may be constructed to signalize the new intersection of Tidball Road and State Route 60[.]" Reproduced Record at 12a (emphasis added). This resolution states a "carefully considered development plan." Further, the Township is expressly authorized to condemn land for "laying out, opening, widening, extending, vacating, grading or changing the grades or lines of streets or highways." Section 1901 of The First Class Township Code, Act of June 24, 1931, P.L. 1206, *as amended*, 53 P.S. §56901.

*Middletown Township* did not establish that a condemnor must prepare a written development plan before it can exercise the power of eminent domain. Nothing in Section 1901 of The First Class Township Code, 53 P.S. §56901, or the Eminent Domain Code, 26 Pa. C.S. §§101-1106, requires the condemnor to prepare a "carefully developed plan" on public roadway use before filing a declaration of taking. Neither statute provides that the governing body of a condemnor must exercise "informed judgment." Further, the General Assembly has instructed that the Eminent Domain Code provides "a complete and exclusive procedure and law to govern all condemnations of property for public purposes[.]" 26 Pa. C.S. §102.

Finally, courts review what a local government or agency does, not why. Whether the condemnation was done for a public purpose is determined by review of what the Township Commissioners approved, not why or how they approved it, *i.e.*, on the same day they received the resolution for a condemnation.

Under the Morgan Doctrine, it is inappropriate to depose an agency head to explain the process by which she made a decision, including "the manner, extent of study of the record and consultation with subordinates." *U.S. v. Morgan*,

313 U.S. 409, 422 (1941).[2]  Agency heads must rely upon staff when they act, lest the work of government grind to a halt.  Courts look, instead, to the merits of the decision and do not "try to penetrate the precise course of the Secretary's reasoning." *Id*. at 420.  *Morgan* cautioned against depositions that "probe the mental processes" of the responsible government official, explaining that the "integrity of the administrative process" requires no less.  *Id*. at 422.  The depositions of the Township Commissioners were inappropriate in their line of inquiry but, in any case, did not prove Condemnee's case.

In its appeal, Condemnee has conflated the condemnor, the Township, with its governing body, the Township Commissioners.  The Township has to show a primary public purpose for its condemnation when challenged, but it did not have to show that its Board of Commissioners is comprised of Solons.  Simply, the depositions into the mental processes of the Township Commissioners were not relevant to the question of whether the reconfigured road will serve a public purpose.

I would affirm the trial court's well-reasoned opinion.

_____

MARY HANNAH LEAVITT, President Judge Emerita

---

[2] This process is also known as the deliberative process privilege.  *See Joe v. Prison Health Services, Inc*., 782 A.2d 24, 33 (Pa. Cmwlth. 2001).  The deliberative process privilege "permits the government to withhold documents containing confidential deliberations of law or policymaking, reflecting opinions, recommendations or advice."  *Id*.  "The privilege recognizes that if governmental agencies were forced to operate in a fishbowl, the frank exchange of ideas and opinions would cease and the quality of administrative decisions would consequently suffer."  *Id.*

MHL-6